UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

MISSIE LEWIS,

                                    Plaintiff,

              -against-

THE CITY OF NEW YORK, RAYMOND KELLY,
POLICE COMMISSIONER OF THE NEW YORK CITY
POLICE DEPARTMENT, SERGEANT FRANK
GIORDANO, SERGEANT PHILIP SANSONE,
SERGEANT THOMAS BOYLE, and DEPUTY
INSPECTOR FRANK VEGA, in their individual and
official capacities,

                                  Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS'
STATEMENT OF
UNDISPUTED FACTS
PURSUANT TO LOCAL
CIVIL RULE 56.1**

06 CV 3970 (NRB)

         Pursuant to Local Rule 56.1 of the Civil Rules of this Court, defendants submit their statement of material facts as to which there is no genuine issue of fact to be tried:

         1. Plaintiff, a Black female, is a former police officer employed by the New York City Police Department ("NYPD") who brings this action pursuant to Title VII, 42 USC § 1983 as well as State and City Human Rights Laws claiming discriminatory acts commencing on July 22, 2005.  Specifically, plaintiff claims that the following alleged acts were also discriminatory: on July 22, 2005, Sgt. Boyle wrote her up in the Minor Violations Log ("MVL"); on August 5, 2005 Sgt. Giordano assigned her to transport duty for a day and wrote her up in the MVL; on or about August 6, 2005 defendant Sgt. Sansone assigned her to foot patrol for several days, wrote her up in the MVL and yelled at her on one occasion; on that same day defendant Inspector Vega took away her gun and shield, placed her on limited duty and ordered her to report to the Psychological unit of NYPD; and on February 8 and May 19, 2006 defendant Sgt.

Boyle issued her two command disciplines and wrote her up once in the MVL.  Plaintiff further alleges that in October 2005 she was discriminatorily denied a promotion to detective in the Organized Crime Control Bureau ("OCCB"), that she was also discriminated against when the NYPD absence control unit visited her residence three times from April 28-May 1, 2006 to verify her absences and that she improperly received a Command Discipline on May 19, 2006. In addition to her claims of discrimination, plaintiff claims that the acts she complains of were taken in retaliation for her filing several federal lawsuits alleging discrimination.  Finally, she also claims that because of the above actions she was subjected to a hostile work environment based on her race.  See, Exhibit "HH", Complaint, ¶¶18-46.[1]

**Background**

2.      Plaintiff was assigned to the 72nd Precinct from 2000 until 2006.  See Exhibit "A", Pl's Dep., 75-19:23.

3.      After plaintiff was assigned to the 72nd Precinct, she requested a steady day tour from 7:05 to 1540 hours and this request was granted by defendant NYPD. See Exhibit "A", Pl.'s Dep., 77: 22-78:25.

4.      Defendant Sergeant Philip Sansone was assigned to the 72nd Precinct from September 24, 2004 until July 2007.  See Exhibit "C", Sansone Dep., 6:24-7:15.

5.      Defendant Sergeant Francis Giordano was assigned to the 72nd Precinct from 2003-2005.  See Exhibit "D", Giordano Dep., 5:17-20.

6.      Defendant Sergeant Thomas Boyle has been assigned to the 72nd Precinct from September 2003 to the present.  See Exhibit "B", Boyle Dep., 5:9-12.

---

[1] Unless otherwise indicated, the exhibits are annexed to the Declaration of Isaac Klepfish, dated March 27, 2008, and submitted herewith.

7.     Defendant Sergeant Francis Giordano was plaintiff's supervisor while he was assigned to the 72nd Precinct.  See Exhibit "A", Pl.'s Dep. 77-20:25.

8.     The duties of desk officer at a precinct are to supervise and oversee all the operations within the Precinct during the tour of duty.  See Exhibit "B", Boyle Dep., 5:25-6:7 and Exhibit "C", Sansone Dep., 11:14-23.

9.     While at the 72nd Precinct defendants Sansone and Boyle were assigned as desk officers.  See Exhibit "B", Boyle Dep., 5:25-6:7 and Exhibit "C", Sansone Dep., 11:14-23.

**Plaintiff's Discipline**

10.     The Minor Violations Log is an informal record of nondisciplinary matters where police officers are written up for minor violations.  See Exhibit "D", Giordano Dep., 33:18-34:5.

11.     If a police officer is written up in the Minor Violations Log this is not deemed discipline and does not result in any consequences to the police officer.  See Exhibit "B", Giordano Dep., 34:12-17 and Exhibit "C", Sansone Dep., 49:5-50:10.

12.     If a police officer is written up three times for the same minor violation, this could result in the issuance of a Command Discipline to the police officer.  See Exhibit "D", Giordano Dep., 34:6-11.

13.     On July 22, 2005 plaintiff was written up in the Minor Violations Log at the 72nd Precinct for failure to appear at Roll Call.  See Exhibit "B" Boyle Dep., 9:22-10:20, Exhibit "Z", Minor Violations Log and Exhibit "HH , Complaint, ¶23.

14.     Plaintiff admits that she came late to Roll Call on July 22, 2005.  See Exhibit "A", Pl.'s Dep., 104:25-105:14; 120:3-4.

15.     Plaintiff agrees that it is appropriate to place an officer in the Minor Violations Log if the officer is late to Roll Call. Id., 119:24-120:2.

16.     On August 5, 2005 plaintiff was written up by defendant Giordano in the Minor Violations Log at the 72nd Precinct for an improper cap device.  See Exhibit "D", Giordano Dep., 14:15-15:12, Exhibit "Z" Minor Violations Log and Exhibit "HH", Complaint, ¶26.

17.     When plaintiff was written up in the Minor Violations Log by defendant Giordano for having an improper cap device, the roll call was conducted in a formal manner with a superior officer present. See Exhibit "D", Giordano Dep., 49:9:21.

18.     On August 5, 2005, plaintiff admits that she was not wearing proper cap device. See Exhibit "A", Pl.'s Dep., 168:1-11.

19.     Plaintiff has no knowledge as to whether another police officer with an improper cap device was not written up in the Minor Violations Log. Id., 169:8-11; 171:11-22.

20.     Other officers at the 72nd Precinct were written up in the Minor Violations Log for violations relating to a uniform as on May 5, 2004 Officer Caffrey, a male white, was written up in the Minor Violations Log at the 72nd precinct by defendant Boyle for exposing non-uniform clothing at roll call.  See Exhibit "B", Boyle Dep., 8:12-22 and Exhibit "Z", Minor Violations Log.

21.     On August 6, 2005 plaintiff was written up by defendant Sansone in the Minor Violations Log at the 72nd Precinct for failure to notify the desk sergeant when entering the station house. See Exhibit "HH" Complaint, ¶32 and Exhibit "Z" Minor Violations Log.

22.     On February 7, 2006, plaintiff was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out in uniform.  See Exhibit "HH", Complaint, ¶37, Exhibit "B", Boyle Dep., 13:4-19 and Exhibit "Z", Minor Violations Log.

23.     Defendant Boyle has never allowed a police officer on patrol to sign out while not in uniform.  See Exhibit "B", Boyle Dep., 13:19-23

24.     Other officers at the 72nd Precinct have also been written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out in uniform.  Thus, on August 24, 2004, Officer Owen, a male white, was written up in the Minor Violations Log by defendant Boyle for failure to sign out in uniform.  See Exhibit "B", Boyle Dep., 26:14-19 and Exhibit "Z", Minor Violations Log.

25.     Additionally, on November 27, 2005, Officer Philips, a male black, was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out in uniform.  See Exhibit "B", Boyle Dep., 27:3-11 and Exhibit "Z", Minor Violations Log.

26.     Defendants Giordano, Boyle and Sansone, all male whites, were written up in the Minor Violations Log at the 72nd Precinct.  Thus, on May 1, 2004, defendant Giordano, a male white, was written up in the Minor Violations Log at the 72nd Precinct for failing to place his initials on paperwork.  See Exhibit "D", Giordano Dep., 44:21-45:5 and Exhibit "Z", Minor Violations Log.

27.     Moreover, on May 18, 2004, defendant Boyle, a male white, was written up in the Minor Violations Log at the 72nd Precinct.  See  Exhibit "B", Boyle Dep., 31:8-18 and Exhibit "Z", Minor Violations Log.

28.     Additionally, on June 27, 2004 defendant Boyle was written up in the Minor Violations Log at the 72nd Precinct for failure to prepare paperwork. <u>See</u> Exhibit "B", Boyle Dep., 7:23-8:9; 31:2-7 and Exhibit "Z", Minor Violations Log.

29.     Furthermore, on August 9, 2004, defendant Boyle was written up in the Minor Violations Log at the 72nd Precinct for failure to verify the return roll call. <u>See</u> Exhibit "B", Boyle Dep., 7:20-8:9 and Exhibit "Z", Minor Violations Log.

30.     Finally, on May 7, 2005, defendant Sansone, a male white, was written up in the Minor Violations Log at the 72nd Precinct by Defendant Vega for failure to conduct a station house security check. <u>See</u> Exhibit "C", Sansone Dep., 62:13-19 and Exhibit "Z", Minor Violations Log.

31.     In the time period from 2004 to mid 2005, besides defendants being written up in the Minor Violations Log, numerous other male White officers were written up in the Minor Violations Log at the 72nd Precinct by defendants Giordano, Sansone and Boyle. Thus, on March 10, 2004, Officer Garda, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle. <u>See</u> Exhibit "B", Boyle Dep., 31:19-32:2 and Exhibit "Z", Minor Violations Log.

32.     Officer Brady, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Sgt. Boyle on April 24, 2004 for failure to sign out. <u>See</u> Exhibit "B", Boyle Dep. 7:19-24 and Exhibit "Z", Minor Violations Log.

33.     On April 26, 2004, Officer Dileo, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out. <u>See</u> Exhibit "B", Boyle Dep., 31:8-18 and Exhibit "Z", Minor Violations Log.

34.     On April 27, 2004, Officer Jacob, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out. See Exhibit "B", Boyle Dep., 9:11-15 and Exhibit "Z" Minor Violations Log.

35.     On January 19, 2005, Officer Raffaele, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Sansone for failure to hand in his report on time. See Exhibit "C", Sansone Dep., 61:13-23; 62:6-7 and Exhibit "Z", Minor Violations Log.

36.     On February 27, 2005, Officer Harriman, a male white, was written up in the Minor Violations Log by defendant Boyle for failure to return the police vehicle keys. See Exhibit "B", Boyle Dep., 8:25-9:10 and Exhibit "Z", Minor Violations Log.

37.     On March 2, 2005, Officer Matthew Anderson, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Boyle for failure to sign out. See Exhibit "B", Boyle Dep., 6:13-7:30 and Exhibit "Z", Minor Violations Log.

38.     On April 3, 2005, Officer Daley, a white male, was written up in the Minor Violations Log at the 72nd Precinct by defendant Sansone for failure to hand in his activity reports on time. See Exhibit "C", Sansone Dep., 57:14-58:5 and Exhibit "Z", Minor Violations Log.

39.     On April 15, 2005, Officer Raffaele, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Sansone for failure to report to his detail on time. See Exhibit "C", Sansone Dep., 61:13-23; 62:6-7 and Exhibit "Z", Minor Violations Log.

40.     On May 7, 2005, Officer Raffaele, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Sansone for failure to hand in activity

sheets on time.  See Exhibit "C", Sansone Dep., 61:13-23; 62:6-7 and Exhibit "Z", Minor Violations Log.

41.    On July 7, 2005, Officer Harriman, a male white, was written up in the Minor Violations Log at the 72nd Precinct by defendant Giordano for failure to return keys.  See Exhibit "D", Giordano Dep., 43:3-9 and Exhibit "Z", Minor Violations Log.

42.    On July 28, 2005, Officer Luduca, a male white, was written up in the Minor Violations Log at the 72nd Precinct for being late to Roll Call.  See Exhibit "A", Pl.'s Dep., 201:8-17.

43.    On February 8, 2006, plaintiff was issued a Command Discipline by defendant Boyle for not wearing her required uniform equipment (4 Belt keepers).  See Exhibit "Q", Command Discipline dated February 8, 2006, Exhibit "B", Boyle Dep., 33:12-34:25 and Exhibit "HH", Complaint, ¶38.

44.    On February 8, 2006, when plaintiff was issued this command Discipline she admits she was not wearing her belt keeper.  See Exhibit "A", Pl.'s Dep., 219:24-220:1.

45.    On February 8, 2006, plaintiff was issued a Command Discipline by defendant Boyle for speaking in a discourteous manner to her supervisor, defendant Boyle.  See Exhibit "R", Command Discipline dated February 8, 2006, Exhibit "B", Boyle Dep., 33:12-34:25 and Exhibit "HH", Complaint, ¶39.

46.    On May 19, 2006, plaintiff was issued a Command Discipline for being insubordinate.  See Exhibit "S", Command Discipline.

47.    On May 19, 2006, plaintiff was issued a Command Discipline for failing to monitor her radio.  See Exhibit "T", Command Discipline.

48.     Plaintiff was not disciplined as a result of these Command disciplines as these Command Disciplines were not adjudicated by the NYPD because plaintiff retired. <u>See</u> Exhibits "Q"-"T", Command Disciplines.

**<u>Plaintiff's Assignments</u>:**

49.     As part of their duties, a police officer may be assigned to many different types of posts.  These include assignment to a Radio Motor Patrol Car ("RMP"), or to various foot posts, transporting prisoners, guarding prisoners, guarding a building, or maintaining control. <u>See</u> Exhibit "C", Sansone Dep., 34:5-8; 35:13-25 and Exhibit "D", Giordano Dep., 29:11-16.

50.     Assignments to various posts are not based on the seniority of police officers. <u>See</u> Exhibit "C", Sansone Dep., 31:23-32:13 and Exhibit "D", Giordano Dep., 8:16-17.

51.     Assignments to posts are made on the availability of personnel, with assignments to the Radio Motor Patrol Car first given to officers with steady partners and then assignments to foot posts are given to police officers who do not have steady partners. <u>See</u> Exhibit "C", Sansone Dep., 32:19-25 and Exhibit "D", Giordano Dep., 7:5-12.

52.     On August 6, and 7 2005, plaintiff did not have a steady partner. <u>See</u> Exhibit "C", Sansone Dep., 32:19-25.

53.     On August 7, 2005, defendant Sansone, the roll call sergeant, assigned plaintiff to cover a foot post at Costco which had a rash of cars being broken into during the weekends while people were shopping. <u>Id</u>., 31:17-22.

54.     Other officers with the same seniority as plaintiff have also been assigned to foot posts. <u>See</u> Exhibit "A", Pl.'s Dep., 181:1-14.

55.     During the month of September 2005, plaintiff was assigned only one time to transport a prisoner to the hospital. Id., 149:8-14.

56.     During the month of October 2005, plaintiff was only assigned on two occasions to transport a prisoner to the hospital. Id., 150:3-8.

57.     Plaintiff has no knowledge as to whether any member of her squad were also assigned to transport prisoners. Id., 151:10-12.

58.     Plaintiff has no knowledge or information as to whether any police officer in the 72nd Precinct, with less or more seniority than plaintiff, was assigned to any details. Id., 156:16-19.

**Referral of Plaintiff to Psychological Services:**

59.     On August 7, 2005, after receiving her assignment to a foot post at Costco, plaintiff advised Sergeant Sansone that she had chest pains and wanted to go on limited duty. See Exhibit "C", Sansone Dep., 36: 2-25; Exhibit "A", Pl.'s Dep., 181:24-182:6; 188:23-24 and Exhibit "HH", Complaint, ¶28.

60.     Plaintiff was directed to meet with defendant Inspector Vega, the Commanding Officer of the 72nd Precinct. See Exhibit "A", Pl's Dep., 182:8-9 and Exhibit "C", Sansone Dep., 37: 2-8.

61.     After their meeting, Inspector Vega secured plaintiff's firearm, directed that plaintiff seek the resources available to her at the NYPD Psychological Services Section and he placed her on restricted duty pending an evaluation of her fitness for duty by the NYPD Health Management Division. See Exhibit "U", Memorandum of Inspector Vega dated August 7, 2005 and Exhibit "V", Removal/Restoration of Firearms Report.

62.    During the interview with Inspector Vega, plaintiff was upset and crying. Id., Exhibit "A", Pl.'s Dep., 186:24-187:11; 189:16-20, Exhibit "X", Notes of NYPD Psychologist and Exhibit "Y", Closing Summary.

63.    The removal of plaintiff's firearm was not disciplinary. See Exhibit "W", Memorandum to Commanding Officer, Medical Division dated August 8, 2005.

64.    On August 8, 2005, Plaintiff was interviewed by Dr. Barman, an NYPD Psychologist of the NYPD Psychological Services Unit, who, after the interview, found plaintiff fit for full duty and he cleared plaintiff for full duty. See Exhibit "Y", Interview Notes of Psychologist dated August 8, 2005 and Exhibit "A", Pl.'s Dep., 195:9-22.

65.    Plaintiff was scheduled to be off work on August 8 and 9, 2005 and as a result of the determination of Dr. Barman returned to full duty on August 10, 2005. See Exhibit "A", Pl.'s Dep., 195: 13-196:5 and Exhibit "U", Memorandum of Inspector Vega.

66.    On August 10, 2005, plaintiff returned to work and was assigned to a patrol car. Id., 195:23-196:4.

**ABSENCE CONTROL**

67.    Police Officers are entitled to unlimited sick leave on full pay. See Exhibit "HH", Article X a. (ii) of the Collective Bargaining Agreement between the City of New York and the Patrolmen's Benevolent Association.

68.    In order to avoid abuse of sick leave, the NYPD absence control unit may authorize a visit to the officers home to determine whether in fact the officer is home while on sick leave. See Exhibit "II", NYPD Administrative Guide, Procedure No. 318-12.

69.     On January 3, 2006, Lt. Keane, the Integrity Control officer of the 72nd Precinct, advised the Absence Control Unit of the NYPD to monitor plaintiff's usage of sick leave. See Exhibit "E", Absence Control Request dated January 3, 2006.

70.     In this request, Lt. Keane stated regarding plaintiff:

> Frequently goes limited duty [sic] believes feigning injury/pain old line duty -- avoids details by going limited.

Id.

71.     At the time Lt. Keane's request was received, plaintiff had been on limited duty from December 12, 2005. See Exhibit "F", Medical History Report.

72.     At the time Lt. Keane's request was made, plaintiff was on limited duty during New Years Eve and thus was not assigned to patrol. Id.

73.     This was the eighth time during her career that plaintiff had been on limited duty on a holiday, thus avoiding going on a detail and this was the second year in a row plaintiff was not on duty the New Years Eve detail. Id.

74.     Thus, from December 31, 1999 to January 1, 2000 plaintiff was on limited duty and not a patrol for the New Years Eve detail. Id.

75.     From July 1, 2001 to July 8, 2001, plaintiff was on limited duty and thus not on patrol for the July 4, 2001 detail. Id.

76.     From August 29, 2001 to September 5, 2001, plaintiff was on limited duty for 7 days and not on a detail for the Labor Day holiday. Id.

77.     From September 6, 2003 to September 13, 2003, plaintiff was on limited duty for 7 days and not on duty for the Labor Day holiday. Id.

78.     From October 31, 2003 to December 4, 2003, plaintiff was on limited duty for 31 days and not on duty for a Halloween detail. Id.

- 12 -

79.     From June 10, 2004 to June 24, 2004, plaintiff was on limited duty for 14 days and was not on duty for the Puerto Rican Day Parade detail.  Id.

80.     From December 27, 2004, plaintiff was on limited duty until January 9, 2005 and was not on duty for the New Years Eve detail.  Id.

81.     On April 24, 2006, plaintiff went out sick.  Id.

82.     On April 26, 2006, Lt. Keane submitted an Absence Control Request to the NYPD Absence Control Unit.  See Exhibit "G", Absence Control Request.

83.     In this request, Lt. Keane stated:

> Sick since 4/24
> malingering, constant sick & limited…, 40 incidents
> 35 incidents.
>
> Request Visit or Observations

Id.

84.     As a result, on April 27, 2006, the NYPD Absence Control Unit visited plaintiff's home to insure she was at home.  See Exhibit "H", ACIU Daily Worksheet.

85.     Plaintiff was also visited by the Absence Control Unit from April 28 - May 1, 2006.  See Exhibit "I", ACIU Daily Worksheets.

86.     Plaintiff remained on limited duty through May 9, 2006.  See Exhibit "F", Medical History Record of Plaintiff.

87.     While plaintiff remained on limited duty through May 9, 2006, plaintiff was not visited by the Absence Control Unit after May 1, 2006.  See Exhibit "H" and "I", ACIU Daily Worksheets.

88.     Seven other Police Officers, namely Officers Chan, Burke, Floyd, Louard, Curti, Witt and Taylor, were visited along with plaintiff during this five day period of April 27, 2006-May 1, 2006.  See Exhibit "H", and Exhibit "I", ACIU Daily Worksheets.

89.     While plaintiff was no longer visited after May 1, 2006, these seven officers were also visited a every day through May 7, 2006. See Exhibit "H", and Exhibit "I", ACIU Daily Worksheets.

**Denial of Plaintiff's Application to OCCB:**

90.     In or about December 2004, plaintiff applied to be a detective in OCCB. See Exhibit "AA", Plaintiff's Application.

91.     Defendant Deputy Inspector Vega, plaintiff's Commanding Officer recommended plaintiff for the position. See Exhibit "BB", Commanding Officer's Recommendation and Exhibit "A", Pl.'s Dep., 190:16-18.

92.     On or about March 1, 2005, plaintiff was disapproved for the assignment based on prior record evidenced by her Central Personnel Index record ("CPI"), her prior sick record and her prior arrest activity record. See Exhibit "CC", Disapproval dated March 1, 2005.

93.     Plaintiff agrees that NYPD had a legitimate excuse for not selecting plaintiff for the position of Detective in OCCB at that time. See Exhibit "A", Pl.'s Dep., 103:16-104:7; 111:4-112:7.

94.     The CPI indicated that plaintiff had a) been involved in a domestic incident b) been involved in a physical altercation with a driver of a car she stopped c) been found guilty of failing to properly safeguard her secure firearm and for wrongfully engaging in conduct prejudicial to the NYPD, and d) a prior negative evaluation. See Exhibit "DD", Central Personnel Index.

95.     Plaintiff's prior sick record at that time indicated 34 incidents of sick leave. See Exhibit "EE", Personnel Profile, Personnel and Medical History Reports.

96.     Plaintiff's prior arrest activity revealed that as of February 7, 2005, plaintiff since her appointment had only made 40 arrests, including 13 felonies and 25 misdemeanors. See Exhibit "FF", Personnel Profile Arrest Activity Summary.

97.     On October 10, 2005, OCCB once again disapproved plaintiff's application for the same reasons as previously indicated, namely, her CPI record, sick record and prior activity. See Exhibit "GG", Disapproval dated October 10, 2005.

98.     Plaintiff has no knowledge as to whether any other white officer with a similar arrest and sick record as plaintiff was promoted to a Detective in OCCB. See Exhibit "A", Pl.'s Dep., 102:15-24.

99.     Plaintiff has no knowledge as to whether the individual defendants played a role in plaintiff not getting the promotion to detective. See Exhibit "A", Pl.'s Dep., 96:15-98:7.

100.    Plaintiff has no knowledge as to whether the individuals who made the determination to reject plaintiff's application for a detective were aware of plaintiff's prior legal proceedings with the NYPD. Id., 82:5-22.

**Plaintiff's Prior Proceedings:**

101.    Plaintiff was a named party to a class action filed in 1997 challenging transfers from the 70th Precinct. This case is entitled PBA v. City, 97 Civ. 7895 (SAS). See Exhibit "J", Docket Sheet.

102.    The Court entered judgment for the individual plaintiffs on November 21, 2000. See Exhibit "K", Judgment.

103.    The Judgment was affirmed by the 2nd Circuit Court of Appeals on January 6, 2003. See Exhibit "J", Docket Sheet.

104.     Plaintiff also filed an action in 2002 entitled <u>Lewis v. City of New York</u>, 02 Civ. 3797 (ARR).  <u>See</u> Exhibit "L," Docket Sheet.

105.     This action was resolved by a Stipulation of Settlement executed on October 29, 2003.  <u>See</u> Exhibit "M", Stipulation and Order of Settlement and Discontinuance.

106.     A lawsuit entitled <u>Latino Officers Association</u> v. <u>The City of New York</u>, <u>et. al</u>. 99 CIV. 9568 (LAK) was commenced in 1999.  <u>See</u> Exhibit "N", Docket Sheet.

107.     Plaintiff was not a named plaintiff in this case.  <u>Id</u>., and Exhibit "A", Pl.'s Dep., 41:14-16.

108.     In or about December 2003, a Stipulation of Settlement of this case was executed by the parties.  <u>See</u> Exhibit "O", Stipulation and Order.

109.     As part of the Stipulation of Settlement, individuals who were not named plaintiffs could submit claims which under certain circumstances would be reviewed by Kenneth Feinberg, a Special Master appointed by the Court to resolve submitted claims.  <u>Id</u>.

110.     Plaintiff submitted a claim to the Special Master in July 2004.  <u>See</u> Exhibit "P", claim submitted by plaintiff.

111.     Plaintiff has no knowledge as to whether defendant Sansone was aware of plaintiff's prior legal proceedings.  <u>See</u> Exhibit "A", Pl.'s Dep., 74:6-11; 15-17.

112.     Plaintiff has no personal knowledge as to whether defendant Giordano was aware of plaintiff's legal proceedings with NYPD.  <u>Id</u>., 71:11-72:22; 74:18-22.

113.     Plaintiff has no knowledge as to whether defendant Boyle was aware of plaintiff's prior legal proceedings.  <u>Id</u>., 73:10-74:1; 15-17.

114.   Plaintiff has no knowledge as to whether defendant Vega was aware of plaintiff's prior legal proceedings. Id., 72:23-73:9; 74:15-17.

Dated:      New York, New York
            March 27, 2008

<br>

                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-171
                              New York, New York 10007
                              (212) 788-0897

<br>

                    By:       _____
                              ISAAC KLEPFISH (IK3478)
                              Assistant

Index No. 06 CV 3970 (NRB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MISSIE LEWIS,

Plaintiff,

-against-

THE CITY OF NEW YORK, RAYMOND KELLY, POLICE
COMMISSIONER OF THE NEW YORK CITY POLICE
DEPARTMENT, SERGEANT FRANK GIORDANO,
SERGEANT PHILIP SANSONE, SERGEANT THOMAS
BOYLE, and DEPUTY INSPECTOR FRANK VEGA, in
their individual and official capacities,

Defendants.

**DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Isaac Klepfish*
*Tel: (212) 788-0897*
*NYCLIS No.*

*Due and timely service is hereby admitted.*

*New York, N.Y. ....................................., 200. . . .*

*........................................................................ Esq.*

*Attorney for .........................................................*